UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY LEE WELLS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 15-cv-00196-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 17, 20 |

Plaintiff Jeffrey Lee Wells seeks judicial review of the Social Security Commissioner's partially unfavorable final decision denying him benefits prior to July 18, 2012. Now before the Court are Plaintiff's motion for summary judgment and the Commissioner's cross-motion for summary judgment. ECF Nos. 17, 20. For the reasons stated below, Plaintiff's motion will be granted and the Commissioner's cross-motion will be denied.

**I.  BACKGROUND**

    **A.  Factual and Procedural History**

        **1.  The November 10, 2010 administrative hearing**

Plaintiff Jeffrey Lee Wells claims disability beginning on September 1, 1998. Administrative Record ("AR") 862. On December 11, 2008, Wells applied for Title II disability insurance benefits and Title XVI supplemental security income. Id. Wells' application was initially denied in January of 2009 and again on reconsideration in October of 2009. AR 89, 96. At his administrative hearing, Administrative Law Judge ("ALJ") Maxine M. Benmour heard testimony from Wells and from vocational expert ("VE") Robert Rashke. Id. The ALJ evaluated Wells' claim using the five-step sequential evaluation process for disability required under federal regulations:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Wells had not engaged in substantial gainful activity since September 1, 1998; that Wells had the following severe impairments: low back pain, right knee pain, neck pain, pseudoseizure disorder, alcohol abuse, and headaches; and that Wells did not have an impairment or combination of impairments that either was listed in the regulations or was medically equivalent to one of the listed impairments. AR 10–11. The ALJ then determined Wells' RFC before proceeding to steps four and five. The ALJ determined:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is able to lift and carry 10 pounds occasionally and less than 10 pounds frequently; sit six hours in an eight-hour workday, and stand and/or walk two hours in an eight-hour workday, with the need to frequently change positions; and occasionally climb, balance, stoop, crouch, kneel, or crawl. The claimant must avoid concentrated exposure to hazards and cannot perform repetitive pushing and pulling with the lower extremities. The claimant is limited to one-to-two step simple instruction jobs that do not require any reading or writing, and occasional contact with coworkers, supervisors, and the general public.

AR 11–12. At step four, the ALJ found that Wells was unable to perform his past relevant work as a sales manager and warehouse manager. AR 22. At step five, relying on the VE's testimony, the ALJ found that, given Wells' age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform, including positions as a shade assembler and as a masker. Id. The ALJ concluded that Wells was not disabled under Section 1614(a)(3)(A) of the Social Security Act. AR 23.

2

### 2. Motion for summary judgment

Thereafter, the Appeals Council denied Wells' request for review. AR 1. Having exhausted his administrative remedies, Wells sought judicial review in this Court. See Wells v. Colvin, No. 12-cv-05287-JST, 2013 WL 6225180 (N.D. Cal. Nov. 23, 2013). In his complaint, Wells argued that the ALJ erred at step five by relying on the VE's testimony without first inquiring as to whether the testimony conflicted with the Dictionary of Occupational Titles ("DOT"). The Court found an apparent conflict between the DOT and the VE's testimony because, according to the VE, each of the jobs the VE identified required reading and writing, but Wells' RFC precluded jobs requiring those skills. Id. at *4. Despite the conflict between the DOT and the VE's testimony, the ALJ failed to reconcile the deviation. Id. Because this error was not harmless, the Court granted Wells' motion for summary judgment and remanded the case for rehearing. Id. at *5.

### 3. The June 11, 2014 administrative hearing

On June 11, 2014, ALJ Benmour reheard Wells' claim and heard testimony from Wells and VE Bonnie Drumwright. AR 862–957. Wells also submitted additional medical evidence, which included records and assessments about his right arm and hand and left shoulder impairments. See AR 1085-1505. The ALJ evaluated Wells' claim using the five-step sequential evaluation process for disability required under federal regulations. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Wells had not engaged in substantial gainful activity since September 1, 1998, the alleged disability onset date. AR 866. At step two, the ALJ determined that from January 1, 2004 through July 17, 2012, Wells suffered from the following severe impairments: seizure and/or pseudoseizure disorder, degenerative disc disease of the lumbar and cervical spines, status post right leg injury, and alcohol abuse. AR 867. Beginning on July 18, 2012, Wells' impairments also included "nondominant left shoulder impairment." Id. At step three, the ALJ concluded that Wells did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 867–68.

1    The ALJ then determined Wells' RFC before proceeding to step four and five. The ALJ
2    determined that prior to July 18, 2012, Wells had the RFC to perform light work as defined by 20
3    C.F.R. §§ 404.1567(b) and 416.967(b) except:

> [T]hat he could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for four hours in an eight-hour workday; frequently push and/or pull with the bilateral lower and upper extremities; occasionally climb, balance, stoop, kneel, crouch, and crawl; occasionally reach overhead with the nondominant left upper extremity; must avoid concentrated exposure to hazards; and was limited to simple, repetitive tasks with occasional contact with supervisors, co-workers, and the public.

AR 868–69. From July 18, 2012 onward, Wells had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). AR 870–71.

At step four, the ALJ found that Wells was unable to perform any past relevant work. AR 871. At step 5, relying on the VE's testimony, the ALJ found that, prior to July 18, 2012, considering Wells' age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Wells could have performed. AR 872. The VE identified representative occupations such as assembler, small products I (DOT 706.684-022); cannery worker (DOT 529.686-014); and assembler (button & notion) (DOT 734.687-018). Id. After July 18, 2012, the ALJ found that there were no jobs in the national economy that Wells could perform. AR 872–73.

The ALJ concluded that prior to July 18, 2012, Wells was not disabled, but he became disabled on that date and continued to be disabled through that date. AR 873. Thus, as to Wells' application for disability and disability insurance through December 31, 2003, the ALJ determined that Wells was not disabled under sections 216(i) and 223(d) of the Social Security Act. Id. As to Wells' application for supplemental security income, the ALJ determined that Wells was disabled under section 1614(a)(3)(A) of the Social Security Act beginning on July 18, 2012. Id.

On June 14, 2015, Wells filed the instant motion for summary judgment, requesting that the court vacate the Commissioner's adverse disability decision and remand his claim for rehearing. ECF No. 17. Wells challenges the portion of ALJ's decision holding that his impairments were not disabling before July 18, 2012. On August 12, 2015, the Commissioner

filed a cross-motion for summary judgment and opposition to Wells' motion for summary judgment. ECF No. 20. On September 28, 2015, Wells filed his reply.[1] ECF No. 22.

### B. Jurisdiction

The Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. section 405(g).

## II. LEGAL STANDARD

The Court may set aside a denial of benefits only if it is "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1084–85 (9th Cir. 2000). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Id. at 1085. It is "more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). The Court "review[s] the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ." Id. at 1258. The ALJ is responsible for making determinations of credibility, resolving conflicts in medical testimony, and resolving ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

## III. DISCUSSION

Wells argues that the ALJ's partially unfavorable decision was erroneous for the following reasons: (1) the ALJ failed to reconcile the conflict between the DOT and the VE's testimony; and

---

[1] The Plaintiff's reply brief was untimely. See ECF Nos. 4, 19 (setting Wells' optional reply brief deadline for August 26, 2015). The Commissioner also did not comply with the briefing schedule, however: the Court previously granted the Commissioner's request for an enlargement of time to file her motion even though the request was filed after the brief was due. See ECF Nos. 4, 18. The Court has considered both briefs.

(2) the ALJ failed to consider Wells' right hand and arm impairment.[2]

### A.    Apparent Conflict between the VE's Testimony and the DOT

In the five-step evaluation process for disability, the claimant has the burden of proving steps one through four, but at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing other jobs.  20 C.F.R. §§ 404.1520(f)-(g), 404.1560(c); see Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).  The existence of other jobs may be established by taking notice of reliable job information contained in various publications, including the DOT. 20 C.F.R. § 404.1566(d).  The DOT is a presumptively authoritative source on the characteristics of jobs in the national economy.  See Pinto, 249 F.3d at 845–46.  The Commissioner may also rely on the testimony of a VE for information on jobs.  Johnson, 60 F.3d at 1435.

Under Social Security Ruling 00-4p, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency."  Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) (citing Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).  The ALJ has the affirmative responsibility to "determine whether the expert's testimony deviates from the [DOT] and whether there is a reasonable explanation for any deviation." Massachi, 486 F.3d at 1153; see also SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000).  These procedural requirements "ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1153.

The ALJ's pre-July 18, 2012 RFC determination limited Wells to occasionally reaching

---

[2] In his reply brief, Wells also argues that substantial evidence fails to support the ALJ's second RFC determination that his condition improved over the ALJ's first RFC determination.  See ECF No. 22 at 1–3.  Because Wells did not raise this argument in his opening brief, the court declines to consider it.  See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) (citation omitted); see also Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").

6

1    overhead "with the nondominant left upper extremity." AR 869.  At the hearing, the ALJ asked

2    the VE to consider a hypothetical with Plaintiff's age, education, work experience, and RFC,

3    which included this limitation.  AR 943–44.  The VE responded that a person with this RFC could

4    work as a small products assembler (DOT 706.684-022), as a cannery worker (DOT 529.686-014),

5    or as an assembler (button & notion) (DOT 734.687-018).  AR 945–947.  The ALJ then asked the

6    VE if her testimony consistent with the DOT, and the vocational expert responded "yes."  AR 947.

7        Wells contends that, like at his first administrative hearing, the ALJ again failed to explore

8    and explain the conflict between the VE's testimony and the DOT.  ECF No. 17 at 8–9.  Wells

9    argues that the testimony was actually in conflict with the DOT because the jobs require

10   "frequent" or "constant" reaching, and his RFC limits overhead reaching on the left side.  See ECF

11   No. 17 at 9–10; 1991 WL 679050, DOT 706.684-022 (assembler, small products I) (requiring

12   frequent reaching); 1991 WL 674719, DOT 529.686-014 (cannery worker) (requiring constant

13   reaching); 1991 WL 679950, DOT 734.687-018 (assembler (button & notion)) (requiring constant

14   reaching).  Because of this alleged error, Wells requests that the decision be vacated and remanded

15   for rehearing.  ECF No. 17 at 10; see Pinto, 249 F.3d at 847 ("in order for an ALJ to rely on a job

16   description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must

17   definitively explain this deviation.").

18       The Commissioner counters that there is no apparent conflict between the DOT and the

19   VE's testimony.  ECF No. 20 3–5.  Because the DOT categorizes occupations by the frequency of

20   reaching but not the direction of reaching, the Commissioner argues that nothing in the DOT

21   indicates whether the jobs require reaching overhead or below shoulder level.  See ECF No. 20 at

22   3; 1991 WL 679050, DOT 706.684-022 (assembler, small products I); 1991 WL 674719, DOT

23   529.686-014 (cannery worker); 1991 WL 679950, DOT 734.687-018.

24       The Commissioner relies primarily on Nelson v. Astrue, No. C-10-0101 EMC, 2010 WL

25   4286316 (N.D. Cal. Oct. 22, 2010), to support her position that the ALJ did not err.  In Nelson, the

26   ALJ had determined that the plaintiff could not reach overhead or fully extend with her dominant

27   left upper extremity.  Id. at *2.  The court found that there was an "arguable conflict" between the

28   VE's testimony and the DOT, because the VE testified that the plaintiff could perform the jobs of

7

ticket seller and order clerk, food/beverage yet both jobs required reaching. Id. at *3. However, the plaintiff failed to bring this issue to the ALJ's attention at the hearing and the "arguable conflict" was not otherwise obvious to the ALJ. Id. The DOT did not state that overhead reaching, full-extension reaching, or reaching with both hands was required. Id. The court further found that the ALJ elicited a reasonable explanation for the conflict before relying on the VE's evidence. Id. at *4. For these reasons, the court rejected the plaintiff's argument that the ALJ failed to comply with SSR 00-4p.

Wells cites to Griego v. Colvin, No. ED CV 14-375-E, 2014 WL 5305815 (C.D. Cal. Oct. 15, 2014), reargument denied (Dec. 17, 2014) to argue that there is conflict between a requirement of frequent reaching and an RFC restriction on reaching overhead or above the shoulder. See id. at *3–*4 (collecting cases). In Griego, the VE testified that a person with no ability to reach overhead could perform the jobs of "information clerk" and "parking lot signaler" – jobs that require "frequent reaching." Id. at *2–*3. The court concluded that there existed at least a possible conflict between the VE's testimony and information contained in the DOT. Id. at *3. Wells also cites to McCabe v. Colvin, No. 3:14-CV-00396-LRH, 2015 WL 4740509, at *9 (D. Nev. Aug. 10, 2015), where the district court remanded the case because of the claimant's RFC limitation on occasional bilateral overhead reaching conflicted with the DOT job descriptions of "frequent reaching." Id. at *11.

The Court concludes that this case differs from Nelson because in that case the ALJ elicited specific testimony from the VE to explain the variance from the DOT, whereas here she did not. 2010 WL 4286316, at *4 (testifying that the plaintiff could accomplish the full-extension reaching with her non-dominant upper extremity). This case also differs from Griego because the ALJ's RFC determination did not limit Wells to never reaching overhead bilaterally and from McCabe because the ALJ's RFC determination did not limit Wells to only occasional bilateral overhead reaching. Instead, the ALJ determined that he was limited to occasionally reaching overhead with the non-dominant, left upper extremity. AR 869.

This case is similar to Richardson v. Astrue, No. 11-CV-1332-LHK, 2012 WL 5904733 (N.D. Cal. Nov. 26, 2012), where the ALJ determined that the plaintiff was limited to occasional

overhead reaching.  Id. at *6.  The VE testified that the individual could perform the jobs of cashier II, office helper, merchandise marker, and pari-mutuel ticket seller, and the DOT described that these jobs require frequent reaching.  Id.  The ALJ did not acknowledge or resolve the conflict.  Id.  Because the ALJ did not investigate the potential inconsistencies, the court concluded that it could not determine whether the ALJ properly relied on the VE's testimony and whether substantial evidence supported the ALJ's step-five finding that the plaintiff could perform other work.  Id. at *7.

Similarly, in Prochaska v. Barnhart, 454 F.3d 731 (7th Cir. 2006), the VE testified that an individual who could only occasionally reach above shoulder level could perform the job of cashier.  However, under the DOT, working as a cashier required frequent reaching.  Id. at 736.  The Prochaska court stated "[i]t is not clear . . . whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help."  Id.

Finding Richardson and Prochaska persuasive, the Court concludes that the VE's testimony was incomplete and the ALJ erred in failing to explain the apparent conflict between the VE's testimony and the DOT.  Under the DOT descriptions, the jobs of small products assembler, cannery worker, and assembler (button & notion) all require constant or frequent reaching, but the descriptions do not identify whether overhead reaching is required, or how frequently.  It is possible that these jobs require frequent bilateral overhead reaching, in which case Wells could not perform them.  It is also possible that these jobs either never or only occasionally involve overhead reaching, in which case he could perform them.

Because this potential inconsistency between Wells' overhead reaching limitation and the DOT job descriptions was not resolved, the Court remands this matter to the ALJ for further development of the record.

### B. The Right Arm and Hand Impairments

At step two of the sequential evaluation process, the ALJ identifies a claimant's severe impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416. 920(a)(4)(ii), and 416.920(c).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do

basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).  The step two inquiry is "a *de minimus* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Accordingly, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686–87 (9th Cir. 2005) (citation omitted).

Wells argues that although he provided direct evidence regarding his right arm and hand impairments, the ALJ's RFC finding did not consider this evidence.  ECF No. 17 at 6.  The impairments could have resulted in "potentially determinative limitations of grasping and fingering." Id. at 10.  The Commissioner, on the other hand, contends that the ALJ did consider the newly submitted medical evidence and that substantial evidence supported the ALJ's evaluation of Wells' RFC prior to July 18, 2012.  ECF No. 20 at 5–7.

Wells injured his arm on August 12, 2009 while attempting to move a bed.  AR 1145–46.  Prior to Wells' first administrative hearing, he indicated that he broke his elbow in August 2009 and suffered from "pain, neuropathy, and difficulty gripping with [his] right (dominant) hand." AR 273.  In October 2010, a non-examining physician noted in Wells' physical RFC assessment that his impairment was fairly recent, but predicted that any significant limitations were expected to last fewer than twelve months.  See AR 377.[3]  By the time Wells' first hearing occurred, the ALJ had available only nine months of evidence of Wells' right hand and arm impairment.  ECF No. 17 at 3.

On remand, Wells submitted additional records to supplement the original records regarding his right hand and arm impairment.[4]  See, e.g., AR 1221–1420.  In August of 2009, Dr.

---

[3] The doctor's precise language was "Appears cl's RUE frx (happened while he was moving a bed vs involved in a fight) was fairly recent and no 12 mos duration of any sig limitations expected." Id.

[4] The ALJ did consider newly submitted medical evidence regarding his left shoulder impairment that began January 2012.  See AR 870–71.  The ALJ found that this impairment was severe; this contributed to the finding that Plaintiff was disabled beginning on July 18, 2012.  Id.

10

Daniel Solomon, an orthopedist, found that Wells had suffered a right radial head fracture,[5] AR 1328, which had healed by December 2009, AR 1326. Following this injury, Wells began to display radial nerve symptoms, and a nerve conduction study was recommended. AR 1327. In November 2010, Dr. Solomon noted that Wells was continuing to experience symptoms of right radial sensory neuropathy fifteen months after breaking his arm. See AR 1317.

Similarly, in November 2009 and April 2010, Dr. Holly Kelly conducted EMG nerve conduction studies and assessed Wells' right radial sensory neuropathy. See AR 1244–46. In November 2009, Dr. Kelly found that Wells had an "excellent prognosis for recovery." See AR 1246. But in December 2010, she concluded that his radial nerve palsy was "unresponsive due to adverse reactions from multiple neuropathic analgesic trials." AR 1241.

At his second administrative hearing, Wells testified about his right hand and arm. He explained that he experiences arthritic pain in his right hand as a result of the 1990 fracture, and has neuropathy, as a result of breaking his hand in 1990 and breaking his arm in 2009. AR 933–34. Wells stated that he experienced numbness in his right thumb and index finger and that he had trouble using his right hand. AR 933–935. When asked by the ALJ about the specific ways he had difficulty using his right hand, Wells stated that instead of playing the guitar for three hours, he can only play the guitar in twenty minute increments. He also testified that he was able to run errands, such as doing laundry, grocery shopping, and light cleaning. AR 936–38.

At step two of the five-step sequential evaluation process, the ALJ determined that from January 1, 2004 to July 17, 2012, Wells had the following severe impairments: seizure and/or pseudoseizure disorder, degenerative disc disease of the lumbar and cervical spines, status post right leg injury, and alcohol abuse. AR 867. Thereafter, Wells also suffered from the left shoulder impairment. Id.

Based on Wells' testimony and the assessments of his treating physicians, substantial evidence of Wells' neuropathic pain was presented to the ALJ. The ALJ, however, made no determination regarding whether Wells' right arm and hand neuropathy constitutes a severe

---

[5] The radial head is the knobby end of the radial bone where it meets the elbow.

11

impairment. The Court concludes this was error. In reaching a decision, the ALJ must consider all of the relevant evidence in the record. Here, the Court cannot tell if probative evidence was credited, not credited, or simply ignored.[6]

Because the ALJ resolved step two in Wells' favor and continued the sequential evaluation, any error in not evaluating his arm and hand impairments at step two is only harmful if the ALJ failed to properly consider the limitations stemming from his arm and hand impairments at later steps of the analysis. See Burch, 400 F.3d 676; see also Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding failure to list plaintiff's bursitis as severe at step two harmless where associated limitations were considered at step four).

In Burch, for example, the Ninth Circuit assumed, without deciding, that it was legal error for the ALJ not to discuss plaintiff's obesity in his step two analysis. 400 F.3d at 682. The Ninth Circuit concluded, however, that the assumed error was harmless, because it would not have impacted the ALJ's analysis at either step four or five of the evaluation process. For purposes of step four, the Ninth Circuit found that the plaintiff failed to point to any evidence of functional limitations due to her obesity that would have impacted the ALJ's analysis. Id. at 683. Further, at step five, the Ninth Circuit found that no prejudice occurred, because the ALJ "adequately considered [plaintiff's] obesity in his RFC determination" and that there were no "functional limitations as a result of [plaintiff's] obesity that the ALJ failed to consider." Id. at 684.

In this case, unlike in Burch and Lewis, the Court cannot conclude that the ALJ's failure to consider Wells' neuropathic pain was harmless. In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by "all of an individual's impairments, even those that are not severe." SSR 96-8p; see Burch, 400 F.3d at 683–84. Wells introduced medical opinions related to his right radial sensory neuropathy, and he also testified about the impairment and his symptoms at the second hearing. The ALJ did not discuss whether she considered and/or

---

[6] The Commissioner contends that an updated consultative examination – which took place on January 13, 2014 – substantially supports the ALJ's RFC determination. See AR 1431–35. The ALJ's decision, however, did not discuss Wells' right arm and hand impairments, and did not discuss Dr. Pon's findings as they related to Wells' right arm and hand impairments.

12

rejected the opinions of Wells' treating physicians regarding his neuropathic pain and failed to discuss Wells' testimony about his limitations and symptoms. If considered, this information could have impacted the ALJ's analysis at step five of the sequential evaluation process. Although the Commissioner may ultimately conclude that Wells' impairment does not lead to a work limitation, it cannot be ignored without explanation.

Accordingly, because the Court cannot conclude that Wells was not prejudiced at a later step, the Court cannot find the ALJ's error to be harmless.

### C. Remand

Where an ALJ's decision is not based on substantial evidence or contains legal error, the reviewing court may remand for further evidence, or enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (internal citation and quotation marks omitted). A court may credit evidence and remand for an award of benefits where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence is credited." See Smolen, 80 F.3d at 1292 (citations omitted).

In this instance, remand for additional proceedings is appropriate so the agency may determine whether Wells' arm and hand limitation is severe, and the effect if any of those limitations on Wells' RFC and the remainder of the sequential evaluation process.

///
///
///
///
///
///
///

**CONCLUSION**

The Court grants Wells' motion for summary judgment and denies the Commissioner's cross-motion for summary judgment. The Commissioner's decision is hereby vacated and remanded for further administrative proceedings consistent with this decision.

IT IS SO ORDERED.

Dated: November 24, 2015

JON S. TIGAR
United States District Judge